William J. KERIN, Plaintiff–Counter–Defendant–Appellee,

v.

UNITED STATES POSTAL SERVICE, Defendant–Counter–Claimant–Appellant.

Docket No. 99–6184.

United States Court of Appeals, Second Circuit.

Argued Feb. 11, 2000.

Decided May 31, 2000.

Constance A. Wynn, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (David W. Ogden, Acting Assistant Attorney General, Michael Jay Singer, Attorney, Appellate Staff, Civil Division, Department of Justice, Washington, D.C.; Stephen C. Robinson, United States Attorney for the District of Connecticut, of counsel), for Defendant–Appellant United States Postal Service.

Philip L. Steele, Hartford, CT, for Plaintiff–Appellee William J. Kerin.

Before: WALKER, CALABRESI and KATZMANN, Circuit Judges.

KATZMANN, Circuit Judge:

Defendant United States Postal Service ("USPS") appeals from a supplemental judgment of the United States District Court for the District of Connecticut (Thomas P. Smith, *Magistrate Judge*), awarding plaintiff William J. Kerin ("Kerin") attorneys' fees and costs in the amounts of $172,662.50 and $5,587.87, respectively. The USPS contends on appeal that the district court abused its discretion by misapplying the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"), in awarding attorneys' fees. Because the district court did not adequately specify its basis for the award of attorneys' fees, and erred in the calculation of fees under the EAJA, we vacate and remand.

## BACKGROUND

The factual background and procedural history of this case are set forth in a prior opinion by another panel of this Court, with which we assume familiarity. *See Kerin v. United States Postal Serv.*, 116 F.3d 988, 989–90 (2d Cir.1997) (*"Kerin I "*). In brief, Kerin, the lessor, brought suit against the USPS in 1990, alleging, *inter alia*, that the USPS had breached the lease on its South Windsor, Connecticut, postal facility. *See id.* at 990. The dispute between the parties centered on the maintenance of the sewage system and the parking lot at the postal facility, and Kerin sought to eject the USPS, in addition to claiming money damages for breach of the lease and unjust enrichment. *See id.* The USPS counterclaimed for the expenditures it had made to repair the septic tanks and the parking lot. *See id.* Following a trial conducted over seven days between March and June 1994, the district court issued its

extensive Amended Memorandum of Decision in October 1994. The district court found that ejectment was inappropriate, but held that the USPS was liable for both breach of the lease and unjust enrichment, and further found that the USPS's counterclaim was "excessive, unreasonable, and unmeritorious." Am. Mem. of Decision dated Oct. 14, 1994, at 2, 6. In March 1996, the district court issued its Memorandum of Decision on Damages awarding Kerin $126,802, of which $65,000 was an unjust enrichment award.

The USPS appealed from the district court's judgments, and in *Kerin I* this Court affirmed in part and reversed in part, holding that the USPS was liable for breach of the lease, but that Kerin was not entitled to the $65,000 unjust enrichment award. *See Kerin I*, 116 F.3d at 993–94. *Kerin I* reasoned that the contract damages awarded by the district court were comprehensive, and that Kerin had not proved that the benefit enjoyed by the USPS had harmed him beyond such damages. *See id.* at 994. Accordingly, the Court held that Kerin was only entitled to $61,802 in damages. *See id.*

On remand, the district court proceeded to consider Kerin's motion for attorneys' fees and costs pursuant to the EAJA, and issued its Ruling on Plaintiff's Application for Attorney Fees in May 1999. In analyzing Kerin's eligibility for a fee award, the court first held that Kerin had fulfilled the requirement of being a "prevailing party" under the EAJA, and that the USPS's position was not "substantially justified" under 28 U.S.C. § 2412(d)(1). The district court referred to the analysis and description of the USPS's "inappropriate behavior," and held that the USPS's position was "not substantially justified" as it had no "reasonable basis in fact or law." Ruling on Pl.'s Appl'n for Att'y Fees dated May 7, 1999 ("Ruling"), at 4. It further held that there were no special circumstances precluding an award of attorneys' fees in this case. *See* 28 U.S.C. § 2412(d). The court proceeded to calculate the amount of attor-

neys' fees and costs, noting that § 2412(d)(2)(A) provides for a statutory cap of $125 per hour on attorneys' fee awards, absent increases in the cost of living and/or certain special factors. However, the district court held that because of the USPS's bad faith, Kerin was entitled to an increase of $75 per hour beyond the statutory ceiling. Referring to the USPS's "unfairness and arrogance," the district court reiterated its prior finding that the USPS's counterclaim was "excessive," "unreasonable," and "retaliatory," and further held that the USPS had acted improperly by using its superior resources to "cavalierly brush[ ] aside" Kerin's claims by "deploy[ing] expert after expert to crush [Kerin] whichever way he turned." Ruling, at 7. Therefore, by using a rate of $200 per hour to calculate the amount of fees, the district court awarded "attorney fees to [Kerin] in the amount of $172,662.50 and costs in the amount of $5,587.87 pursuant to EAJA 28 U.S.C. § 2412(d)." *Id.* at 7–8.

The USPS filed a timely notice of appeal in July 1999, and argues, *inter alia*, that the district court misunderstood the statutory framework of the EAJA, improperly awarded attorneys' fees for bad faith, failed to account for the USPS's success on its prior appeal, and applied the wrong statutory rate in calculating fees. We find that the district court did not adequately specify the legal and factual basis for its award of attorneys' fees and adopted an erroneous methodology in calculating the amount of such fees. We therefore vacate and remand.

## DISCUSSION

▮▮▮ The standard of review with respect to decisions to award or deny attorneys' fees, including under the EAJA, is abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 571, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Wells v. Bowen*, 855 F.2d 37, 46 (2d Cir.1988). A district court abuses its discretion if it relies on "an erroneous view of the law or on a clearly erroneous assessment of the evi-

dence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

## I. Statutory Framework Governing Awards of Attorneys' Fees Under the EAJA

 In order to analyze whether the district court abused its discretion in awarding attorneys' fees, it is first necessary to understand the statutory framework for an award of such fees under the EAJA. The EAJA contains two distinct and express statutory waivers of sovereign immunity permitting the recovery of attorneys' fees in lawsuits brought by or against the United States. *See* 28 U.S.C. §§ 2412(b), (d); *Wells*, 855 F.2d at 46 (noting that these two bases "stand[ ] completely apart"). First, § 2412(d) states, in relevant part, that:

> [e]xcept as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action (other than cases sounding in tort), ... brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Section 2412(d) is therefore an entirely statutory basis for the award of attorneys' fees. It requires: (1) that the claimant be a "prevailing party";[1] (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U.S.C. § 2412(d)(1)(B), that any fee application be submitted to the court with-

in 30 days of final judgment in the action and be supported by an itemized statement.

*Commissioner, INS v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). With respect to the second prong of this test, the government's position was "substantially justified" if it had "a reasonable basis both in law and in fact." *Pierce*, 487 U.S. at 563, 108 S.Ct. 2541 (internal quotation marks omitted). "To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Id.* at 566, 108 S.Ct. 2541.

With respect to the calculation of fees under § 2412(d), there is a statutory cap of $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Of course, a district court may award "reasonable attorney[s'] fees" pursuant to § 2412(d) using any hourly rate below this statutory cap. The current cap of $125 per hour applies to all civil cases commenced on or after March 29, 1996. *See* Contract with America Advancement Act of 1996, Pub.L. No. 104–121, 110 Stat. 847, 863, §§ 232(b)(1), 233. The previous statutory cap of $75 per hour applies to all cases commenced between March 29, 1996 and October 1, 1981, the effective date of the EAJA. *See id.; Parks v. Bowen*, 839 F.2d 44, 45 (2d Cir.1988) (*per curiam*). The $75 per hour rate therefore applies to this case, which was commenced by Kerin in April 1990, if the district court's award was indeed pursuant to § 2412(d).

---

**1.** A prevailing party is one that has "succeeded on any significant issue in litigation which achieved some of the benefit the part[y] sought in bringing suit," such that the party is able to "point to a resolution of the dispute which changes the legal relationship between itself and the [adversary]." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,*

489 U.S. 782, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (citations and internal quotation marks omitted) (interpreting the "prevailing party" requirement under 42 U.S.C. § 1988). There is no dispute with respect to Kerin's status as a "prevailing party" in this case.

■ Second, § 2412(b) provides, in relevant part, that:

> [u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, ... to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

28 U.S.C. § 2412(b). Therefore, § 2412(b) specifically incorporates the applicable common law with respect to awards of attorneys' fees, and effectively codifies the common law exceptions to the traditional American rule that each party will ordinarily bear its own fees and costs. *See Wells*, 855 F.2d at 46. One of the recognized common law exceptions to the American rule against fee shifting is that attorneys' fees may be awarded where the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (internal quotation marks omitted). The federal courts' power to award bad faith fees arises from "a court's inherent power to police itself, thus serving the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123,

115 L.Ed.2d 27 (1991) (internal quotation marks and brackets omitted); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986). In order to award bad faith fees, the district court must find that the losing party's claim was (1) meritless;[2] and (2) brought for improper purposes such as harassment or delay. *See Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Id.*

■ In contrast to § 2412(d), the statutory language of § 2412(b) imposes no ceiling on the hourly rate used to calculate bad faith fees, requiring only that such fees be "reasonable." 28 U.S.C. § 2412(b). In order to determine a "reasonable" fee pursuant to § 2412(b), the district normally calculates "a so-called 'lodestar' figure, which is arrived at by multiplying 'the number of hours reasonably expended on the litigation ... by a reasonable hourly rate.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir.1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "The lodestar should be based on prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community." *Id.* at 172 (citation and internal quotation marks omitted). If the reasonable hourly rate is higher than the statutory cap of § 2412(d), § 2412(b) "exposes the government to liability for costs and fees above and beyond the limit set by section 2412(d)." *Wells*, 855 F.2d at 46 (citing *Barry v. Bowen*, 825 F.2d 1324, 1333–34 (9th Cir.1987)).

---

2. The first prong of the test for bad faith fee awards requires that the losing party's claims be meritless or "entirely without color." *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985) (internal quotation marks omitted).

A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be* established, not whether such facts actually *had been* established. *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980) (*per curiam*)(footnote omitted); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir.1999).

Thus, not only are §§ 2412(b) and (d) statutorily distinct, but the elements required to sustain a fee award under each subsection are different as well. Further, there are different methodologies for fee calculations under each subsection, with § 2412(b) potentially exposing the government to much greater liability under the common law, given the absence of a statutory cap.

## II. Analysis of the District Court's Award of Attorneys' Fees

■ An examination of the district court's opinion reveals that it may have conflated §§ 2412(b) and (d) in awarding attorneys' fees to Kerin. Although the district court explicitly stated that it awarded "attorney fees ... pursuant to EAJA 28 U.S.C. § 2412(d)," and noted the statutory cap for awards pursuant to § 2412(d), the district court also stated that fee awards under that subsection may nevertheless be increased beyond the cap for bad faith, citing *Kania v. Shalala*, No. 91–CV–0766E(H), 1995 WL 307604, at *1 (W.D.N.Y. May 10, 1995), and this Court's decision in *Wells*. The district court proceeded to calculate the amount of attorneys' fees using an hourly rate that was $75 higher than what it incorrectly believed the statutory ceiling to be, *see infra* pages 192–93, relying on its finding that the USPS acted in bad faith. Thus, the district court's opinion suggests that attorneys' fees under the EAJA are first calculated pursuant to § 2412(d), subject to an hourly cap, and may subsequently be enhanced beyond this cap upon a finding of bad faith.

However, neither of the authorities cited by the court below support such a methodology. In fact, both explicitly rely on § 2412(b), which is the sole permissible basis for any award of bad faith fees under the EAJA, and entirely separate from § 2412(d). *See Kania*, 1995 WL 307604, at *1; *Wells*, 855 F.2d at 46. Section 2412(d) provides for fee awards above the statutory ceiling only in certain limited circum-stances, not including bad faith, which are not applicable here. *See* 28 U.S.C. § 2412(d)(2)(A) (permitting an award above the statutory ceiling if a "special factor," such as "the limited availability of qualified attorneys for the proceedings involved," is present); *Atlantic Fish Spotters Ass'n v. Daley*, 205 F.3d 488, 491 (1st Cir.2000) (stating that exception to statutory cap applies to attorneys having "some distinctive knowledge or specialized skill needful for the litigation in question" (quoting *Pierce*, 487 U.S. at 572, 108 S.Ct. 2541) (internal quotation marks omitted)). Therefore, the basis for the district court's award is ambiguous. The court may have been either erroneously enhancing a fee award under § 2412(d) for bad faith, or awarding bad faith fees under § 2412(b), but its opinion does not clearly indicate which of these interpretations is accurate.

In addition to this ambiguity in the underlying statutory basis for the district court's fee award, the decision of the district court raises other questions as well. First, to the extent that the district court based its fee award solely on § 2412(b), such that it was, in effect, applying a $200 per hour lodestar based on bad faith alone, the court did not make clear the specific conduct of the USPS that it considered to have been in bad faith. As noted above, § 2412(b) incorporates the common law with respect to bad faith fee awards. This Court has consistently held that fee awards under the bad faith exception must be supported by "clear evidence," and that the factual findings of the court below must exhibit a *"high degree of specificity."* *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir.2000) (*per curiam*) (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986)) (internal quotation marks omitted); *cf. Association of Am. Physicians and Surgeons, Inc. v. Clinton*, 187 F.3d 655, 660 (D.C.Cir.1999) (holding that the standard for bad faith is "stringent" and must be supported by "clear and convincing evidence" (internal quotation marks omit-

ted)). Thus, a naked statement that the losing party acted in bad faith is not enough, as the district court must make sufficiently specific factual findings to support the determination that the conduct in question was both meritless and undertaken for improper purposes. *Cf. MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1262 (2d Cir.1996) (vacating sanctions because the district court "engaged in no detailed consideration of what conduct . . . satisfied the bad faith requirement of [28 U.S.C.] § 1927")

In analyzing whether the position of the USPS was "substantially justified" under § 2412(d)(1), the district court quoted from its Amended Memorandum of Decision, referring solely to the USPS's conduct prior to the commencement of the underlying litigation. The court declared that the USPS took "inappropriate advantage of its superior power and resources" and "escalated the dispute." Ruling, at 4. It further stated that:

the evidence suggests that [the USPS] invariably proceeded on the assumption that the plaintiff's arguments were meritless, without actually making a good faith effort to analyze the plaintiff's claims. The evidence also suggests that the postal authorities became inappropriately defensive in the face of plaintiff's claims and eventually developed a "we'll show him" attitude, which resulted in the USPS responding to plaintiff's complaints with ever-escalating demands of its own.

*Id.* Subsequently, in calculating the amount of fees and holding that such fees may be enhanced for bad faith, the district court referred to the USPS's "excessive," "unreasonable" and "retaliatory" counterclaim seeking reimbursement of the expenses it incurred with respect to the sewage system and the parking lot. *Id.* at 7.

However, these cursory statements, as well as general references to the USPS's "unfairness and arrogance," do not exhibit the degree of specificity required to sustain an award of bad faith fees. General characterizations of the nature of the losing party's behavior, unaccompanied by specific references to bad faith conduct, are not enough. The district court may justify the award, for example, by explaining how and when the USPS was "inappropriately defensive," and showing how the USPS escalated the proceedings through inappropriate demands. However, the district court does not explain how any of the USPS's actions were so devoid of merit that, together with detailed findings with respect to the USPS's improper motives, a bad faith award would be justified.[3]

 Specific factual findings are particularly important because bad faith fee awards are "limited to those expenses necessary to counter the losing party's bad faith." *Sierra Club,* 776 F.2d at 389. The amount of bad faith fees awarded is a function of the attorneys' fees attributable to the offensive conduct in question. *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,* 98 F.3d 13, 21 (2d Cir.1996); *Ostano Commerzanstalt v. Telewide Sys., Inc.,* 880 F.2d 642, 650 (2d Cir.1989). If the district court finds that the only bad faith conduct relates to the USPS's allegedly meritless counterclaim, for example, it must limit its fee award to the legal work conducted in defense of that claim. Therefore, without specific factual findings with respect to bad faith conduct, a district court will not be able to calculate the appropriate amount of bad faith fees with a reasonable lodestar alone.

Second, whether the district court was relying on §§ 2412(d) or (b), it erred in calculating the amount of attorneys' fees.

---

**3.** "It is sometimes possible to infer bad faith from[, for example,] the meritlessness of a motion." *See Eisemann,* 204 F.3d at 397 (citing *Schlaifer Nance & Co. v. Estate of Warhol,* 194 F.3d 323, 338 (2d Cir.1999)). The district court did find that the USPS's counterclaim was meritless, but did not explain in what way the counterclaim was without merit, and did not make clear that the sheer meritlessness of the counterclaim may support an inference of improper motives.

If the district court was in fact relying solely on § 2412(d), then it used the wrong statutory cap in calculating attorneys' fees based on an hourly rate of $200 and premising an increase of $75 per hour on·the USPS's bad faith. As Kerin explicitly concedes, the district court erroneously applied the current statutory cap of $125 per hour, instead of the $75 per hour cap applicable to cases commenced in 1990. If the district court's fees calculation was instead pursuant to an award · under § 2412(b), its methodology was also inapposite. A reasonable lodestar in this case· could be either above or below the $200 per hour actually used by the district court in calculating the fee award. The district court should have made findings regarding a reasonable lodestar ·by. referring to the prevailing market rates for the legal services provided. Furthermore, the court should have explained what proportion of the total amount of attorneys' fees paid by Kerin is attributable to the USPS's bad faith conduct.[4]

The lack of a clear explanation of the reasons for the fee award handicaps us in addressing the USPS's arguments in opposition to the district court's decision. Therefore, we vacate and remand for a thorough explanation of the reasons for the award. *Cf. United States v. Eleven Vehicles*, 200 F.3d 203, 211 (3d Cir.2000) (remanding an award of attorneys' fees under the EAJA where the district court granted less than the amount requested but did not explain its reasons on the record); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1081 (7th Cir. 2000) (remanding the denial of an EAJA award for "a thorough explanation of the reasoning behind the district court's decision").[5] While the district court may, in the sound exercise ·of its discretion, award attorneys' fees under either §§ 2412(b) or (d), on· remand the court (i) should make clear which of these distinct waivers of statutory immunity it is relying on; (ii) may not award bad ·faith fees under § 2412(d); (iii) should make specific factual findings with respect to any award of bad faith fees under § 2412(b); and (iv) should adopt ·the appropriate methodology in calculating the amount of fees under either §§ 2412(b) or (d).

We also offer some additional guidance in the interest of judicial economy and in light of the many arguments raised by the USPS on appeal. *Cf. Eleven Vehicles*, 200 F.3d at 211 (remanding for analogous reasons and adopting a similar approach). In doing so, we express no opinion with respect to the merits of a fee award under the EAJA in this case, but merely outline the governing law with respect to such awards. First, we note that the USPS has explicitly conceded before this Court that it is not opposing an award of fees under § 2412(d). The USPS concedes that its position was not "substantially justified," and objects only to the district court's erroneous use of the $125 per hour rate.

---

**4.** None of this precludes the district court from awarding Kerin the full amount of his attorneys' fees on remand, as long as such award is supported by the specific and detailed finding that the entire litigation was a result of the USPS's improper conduct and the raising of meritless defenses and counterclaims. We express no opinion as to the proper amount of fees pursuant to § 2412(b) in this case, nor do we express any view as to whether such fees are appropriate at all.

**5.** This Court has squarely held in analogous contexts that appellate review of an award of attorneys' fees must "be informed by the record of why the district court acted as it did," such that a remand is appropriate where "the

district court did not make adequate findings to permit appropriate appellate review." *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 99 (2d Cir.1997) (internal quotation marks omitted) (remanding a fee award under 42 U.S.C. § 1988 because, *inter alia*, "although the district court articulated established standards for determining a reasonable fee, it made no findings of fact"); *cf. International Bhd. of Teamsters v. New York State Teamsters Council Health and Hosp. Fund*, 903 F.2d 919, 923–24 (2d Cir.1990) (remanding "[b]ecause the district judge failed to articulate any reason for his decision to deny attorneys' fees" under ERISA when it should have made "specific findings regarding the matter").

As noted above, the applicable statutory ceiling is $75 per hour, but on remand the district court may choose to apply a cost of living adjustment to this ceiling, as measured by the Consumer Price Index. *See* 28 U.S.C. § 2412(d)(2)(A); *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir.1992). Further, because work on this case "began in 1989 and continued for approximately [nine] years," Ruling at 6, the hourly rate under § 2412(d)(1)(A) should only be increased by the corresponding Consumer Price Index for each year in which the legal work was performed. *See, e.g., Masonry Masters, Inc. v. Nelson*, 105 F.3d 708, 711–13 (D.C.Cir.1997) (holding that cost of living adjustment should be made using a different hourly cap for each year in question); *Marcus v. Shalala*, 17 F.3d 1033, 1039–40 (7th Cir.1994) (same); *Perales v. Casillas*, 950 F.2d 1066, 1076 (5th Cir.1992) (same); *Chiu v. United States*, 948 F.2d 711, 720–21 (Fed.Cir.1991) (same). Using a single cap reflecting the cost of living in 1999 for all nine years to calculate the amount of attorney's fees would result in a *de facto* award of prejudgment interest, which would constitute an abuse of discretion.

■ The USPS also argues that whether attorneys' fees are awarded pursuant to §§ 2412(b) or (d), such award must be reduced to account for its success in reversing the unjust enrichment award on appeal. The USPS's argument should be rejected. The unjust enrichment award was reversed because Kerin failed to show that he was harmed beyond the contract damages that he properly obtained. *See Kerin I*, 116 F.3d at 994. Because the basis for the reversal in part in *Kerin I* was that the contract and unjust enrichment claims overlapped, and Kerin pre-

vailed on the contract claims, no reduction was warranted.[6] *Cf. Cabrera v. Jakabovitz*, 24 F.3d 372, 393 (2d Cir.1994) (holding that fee award in Title VII case was justified because the plaintiffs "prevailed on a significant legal issue," even though only one dollar in nominal damages was assessed against the defendant in question); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 524 (2d Cir.1991) (holding that "the allocation of fees between successful and unsuccessful claims necessarily lies largely in the discretion of the district court" (citing *Hensley*, 461 U.S. at 436–37, 103 S.Ct. 1933)). The district court was on notice of this Court's reasoning in *Kerin I*, and was presented with this argument by the USPS in its briefs below, such that the court could properly exercise its discretion in awarding fees for the entire action. Further, to the extent that the district court awards bad faith fees pursuant to § 2412(b), the fact that the USPS had some success on appeal is irrelevant. As noted above, the question is what proportion of the attorneys' fees may be attributed to the USPS's improper conduct, and not the extent to which Kerin successfully pursued all the claims in his complaint.

Finally, the USPS argues that the district court erroneously held that its counterclaim was meritless, and that the court improperly relied on prelitigation conduct in awarding fees. In making this argument, the USPS claims that (i) the counterclaim was the only "litigation conduct" referred to by the district court; (ii) the counterclaim was not "entirely without color," *Sierra Club*, 776 F.2d at 390 (internal quotation marks omitted), such that it may not form the basis of a bad faith fee award; (iii) the sole remaining basis for the fee award is the USPS's "prelitigation con-

---

6. This Circuit has held in the context of awards of attorneys' fees under 42 U.S.C. § 1988 that "[a] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir.1997). The district court therefore has the discretion to award fees for the entire litigation where the claims are "inextricably intertwined" and "involve a common core of facts or [are] based on related legal theories." *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1259 (2d Cir.1987) (internal quotation marks omitted).

duct;" and (iv) bad faith fees may not be awarded solely on the basis of a party's "prelitigation business conduct." Therefore, the USPS contends, the district court abused its discretion. The basis for our vacatur of the fee award and remand of this case makes it unnecessary for us to consider this argument in detail. The district court may not have been awarding bad faith fees pursuant to § 2412(b) at all, and the extent to which it relied on the USPS's counterclaim in erroneously increasing the hourly rate to $200 is unclear. On remand, the district court may choose to make an explicit finding that the USPS's counterclaim was meritless and brought for improper purposes, and refer to additional prelitigation and litigation conduct in awarding fees.

We note that the USPS has not argued that the district court may rely only on conduct during litigation in awarding bad faith fees. Instead, the USPS primarily relies on the Eighth Circuit's decision in *Lamb Engineering & Construction Co. v. Nebraska Public Power District*, which holds that "the court may consider conduct both during and prior to the litigation, although the [bad faith fee] award may not be based solely on the conduct that led to the substantive claim." [7] 103 F.3d 1422, 1435 (8th Cir. 1997) (internal quotation marks and brackets omitted). We find no conflict between this formulation and the rule in this Circuit that "[t]he appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation." *Dow Chemical*, 782 F.2d at 345.

The USPS's argument, in essence, is that bad faith fees may not be premised solely on the purely business conduct from which the underlying cause of action accrued. It is uncontroversial that business conduct that is entirely unrelated to the process of litigation may not form the sole basis of a bad faith fee award. *See Lamb*, 103 F.3d at 1435; *Association of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 550 (9th Cir.1992) (declining to affirm a fee award "based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit"). But the point at which a complaint is filed does not mark the line between conduct that may or may not be considered in awarding fees for bad faith.[8] *See Sanchez v. Rowe*, 870 F.2d 291, 295 (5th Cir.1989) ("We hold that the requisite bad faith may be found in a party's conduct *in response* to a substantive claim, whether before or after an action is filed, but it may not be based on a party's conduct *forming the basis* for that substantive claim."); *cf. Sierra Club*, 776 F.2d at 391 ("[T]he [district] court found that the State's bad faith pre-dated the litigation."). While bad faith fees may not be awarded solely on the basis of prelitigation business conduct, district courts may properly consider such conduct in making a determination that there was bad faith sufficient to justify a fee award. In other words, where the decision to initiate or defend a lawsuit was meritless and made for improper purposes, a fee award may be proper. Therefore, if, for example, the district court specifically finds on remand that the USPS's decision to defend this action in the first place was in bad faith,

---

7. The USPS has not explicitly raised on appeal the same argument about the permissible scope of the district court's inquiry into "prelitigation conduct" with respect to fee awards under § 2412(d). Nevertheless, in the context of an award under § 2412(d), "the government's 'position' includes both its pre-litigation and litigation positions." *Jacobs v. Schiffer*, 204 F.3d 259, 263 (D.C.Cir.2000); *see also Marcus*, 17 F.3d at 1036 (holding that "it is appropriate for the district court to consider the government's litigating position as well as

its prelitigation conduct—the action or inaction that gave rise to the litigation").

8. The terms "prelitigation conduct" and "litigation conduct" may be somewhat misleading here, as the decision to initiate or defend a lawsuit at all may plausibly fall under either of these rubrics. In any event, differences or disagreements in terminology affect neither the outcome of this case nor the applicable law with respect to the bad faith exception.

then it may rely on any conduct that is sufficiently related to the underlying litigation in awarding attorneys' fees for the entire action.[9]

## CONCLUSION

For all of the foregoing reasons, we vacate the district court's supplemental judgment and remand for reexamination of the issue of attorneys' fees consistent with this opinion.

---

9. The district court below stated that "[t]he USPS's position was not substantially justified [pursuant to § 2412(d) ] in either its underlying dealings with plaintiff or in its litigation posture." Ruling, at 4. Given the ambiguities in the district court's opinion, it is unclear whether this reference to "underlying deal-

ings" informed the court's award of bad faith fees pursuant to § 2412(b), if indeed it awarded such fees at all. In any event, the district court also refers to the USPS's "litigation posture," suggesting that the USPS's argument is misplaced.