The GRAY PANTHERS PROJECT FUND, et al., Plaintiffs,

v.

Tommy G. THOMPSON, Secretary, Department of Health and Human Services, Defendant.

No. CIV.A. 01–01374 HHK.

United States District Court, District of Columbia.

Feb. 23, 2004.

Vicki Gottlich, Washington, DC, for Plaintiffs.

Peter David Blumberg, U.S. Attorney's Office, Scott Sutherland Harris, U.S. Supreme Court, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

Plaintiffs, four national organizations and individual Medicare beneficiaries, brought this action against defendant Tommy G. Thompson, Secretary, Department of Health and Human Services ("Secretary" or "HHS"), for his failure to comply with statutory obligations under 42 U.S.C. § 1395w–24(a)(1) and 42 U.S.C. § 1395w–21(d). Presently before this court is plaintiffs' motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412[# 33]. Upon consideration of plaintiffs' motion, the opposition thereto, and the record of this case, the court concludes that plaintiffs' motion for attorney's fees should be granted.

## I. BACKGROUND INFORMATION

The attorney's fee issue arises in the context of this suit which was brought to require the Secretary to follow statutory directives that implement the federal Medicare + Choice program. This program provides beneficiaries the option of selecting health coverage from a variety of private plans offered by participating Medicare + Choice Organizations ("MCOs"). In order to participate in the Medicare + Choice program, each participating MCO must provide the Secretary with detailed and accurate information describing the coverage they offer on an annual basis. 42 U.S.C. § 1395w–24(a)(2)–(4). Once the Secretary has this information, he is required "to broadly disseminate" the information regarding the coverage options to eligible individuals, 42 U.S.C. § 1395w–21(d)(1), by *mailing* information comparing the various plans to every eligible individual. 42 U.S.C. § 1395w–21(d)(2)(A).

This action ensued because of two actions taken by the Secretary in 2001. First, the Secretary extended the deadline for MCOs to submit information to HHS regarding their plans. Although the statute at the time required MCOs to provide the information by July 1 of each year, 42 U.S.C. § 1395w–24(a)(1), on May 25, 2001, responding to industry complaints about the problems the statutory deadline posed for MCOs, the Secretary notified three industry associations that he had extended the deadline until September 17. Second,

in equally blatant contravention of statutory authority requiring him to mail plan comparison information to eligible individuals, 42 U.S.C. § 1395w–21(d)(2), the Secretary announced HHS's intention to omit plan comparison data from the annual fall mailing to eligible individuals. In lieu of the mailing, HHS would encourage beneficiaries to obtain plan information directly from HHS, via a dedicated telephone service or the Internet.

Plaintiffs filed the instant action on June 22, 2001, and, on July 19, 2001, filed a motion for a preliminary injunction and for summary judgment. Defending against the motion for a preliminary injunction, the Secretary insisted that his actions were a proper response to logistical, budgetary, and practical considerations. In an oral ruling from the bench on August 9, 2001, this court rejected the Secretary's position, ruling that assuming the Secretary possessed certain residual authority to create statutory exceptions based upon "administrative necessity," he could not meet his heavy burden of showing the impossibility of compliance with the statutory directives at issue in this case. Tr. of Prelim. Inj. at 4 (Aug. 9, 2001). The court made particular mention of the Secretary's "audacity" in claiming on the one hand that mailing plan comparison information to beneficiaries would be too expensive, while on the other proposing to spend *$35 million* on advertisements to educate beneficiaries about how to obtain plan information. *Id.* at 8. Thus the Secretary was enjoined to comply with § 1395w–21(d).

In compliance with the court's order, HHS disseminated a supplemental mailing with the plan comparison information on October 17, 2001. Because the July 1 deadline had passed, however, the Secretary did not comply with § 1395w–24(a)(1) during that year. On September 6, 2002, the court denied the Secretary's motion to dismiss for lack of subject matter jurisdiction or for a stay of proceedings and granted plaintiffs' motion for summary judgment.

## II. ANALYSIS

Plaintiffs seek an award of attorney's fees under two provisions of the EAJA. First, plaintiffs seek fees under 28 U.S.C. § 2412(d) which authorizes an award of attorney's fees when the United States' position was not substantially justified. A statutory cap on the hourly rate of $125.00 exists for fees under § 2412(d), which can be adjusted for cost of living increases. 28 U.S.C. § 2412(d)(2)(A)(ii). Second, plaintiffs seek fees under 28 U.S.C. § 2412(b), which authorizes an award of reasonable attorney's fees to the prevailing party in a civil action brought against an official of the United States acting in his official capacity. Section 2412(b) states that the United States shall be liable for fees and expenses "to the same extent that any other party would be liable under the common law." Plaintiffs contend that they are entitled to fees under § 2412(b) under the common law's exception to the "American Rule" against attorney's fees "where the losing party has acted in bad faith." *Am. Hosp. Ass'n v. Sullivan,* 938 F.2d 216, 219 (D.C.Cir.1991) (internal quotation marks and citations omitted). No statutory ceiling on the hourly rate used to calculate fees under § 2412(b) exists; thus, an award of attorney's fees for bad faith can be calculated at market rates. *See Kerin v. U.S. Postal Serv.,* 218 F.3d 185, 190–91 (2d Cir.2000).

The Secretary only partially opposes plaintiffs' motion for fees. He does not dispute that his position was not substantially justified under § 2412(d). The Secretary, however, argues that he did not act in bad faith and, therefore, fees at the

hourly rate permitted under Section 2412(b) are not warranted. He also disagrees with plaintiff's position with respect to the reasonableness of the number of hours plaintiffs' attorneys devoted to litigating certain aspects of this case.

## A. Bad Faith

■ A party may be required to pay attorney's fee as an exception to the common law's "American Rule" against attorney's fees when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co. v. United States,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). An award of attorney's fees under § 2412(b) can be based on conduct occurring during the litigation or conduct that gave rise to the litigation itself. *Am. Hosp. Ass'n,* 938 F.2d at 219. A court can find pre-litigation bad faith "where a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *Id.* at 220 (internal quotation marks and citation omitted). "[T]he substantive standard for a finding of bad faith is 'stringent' and 'attorney's fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand.'" *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,* 187 F.3d 655, 660 (D.C.Cir.1999) (quoting *Nepera Chem., Inc. v. Sea–Land Serv., Inc.,* 794 F.2d 688, 702 (D.C.Cir.1986)). A finding of bad faith must be supported by "clear and convincing evidence." *Id.* (quoting *Shepherd v. Am. Broadcasting Cos.,* 62 F.3d 1469, 1476–78 (D.C.Cir.1995)).

Plaintiffs do not claim bad faith regarding the manner in which the instant litigation was defended. Instead, plaintiffs argue that the conduct that gave rise to this action was in bad faith, i.e., the Secretary's extension of the deadline until September 17, 2001 for MCOs to submit information about coverage options and his announcement that HHS would not be disseminating comparative plan information by mail.

■ Having considered the evidence relevant to the issue, the court finds by clear and convincing evidence that the Secretary's actions were in bad faith. Specifically, while aware of the unambiguous statutory mandates of 42 U.S.C. § 1395w–24(a)(1) and 42 U.S.C. § 1395w–21(d), the Secretary nevertheless engaged in conduct that required plaintiffs to undertake otherwise unnecessary litigation to vindicate plain legal rights. *See Am. Hosp. Ass'n,* 938 F.2d at 220. The Secretary's explanation for his wanton conduct offers little in the way of a counterweight to the evidence that supports this court's finding of bad faith. The Secretary contends that he did not act in bad faith because his motivation for extending the deadline for the submission of information about MCO plans was his legitimate concern that the number of MCOs leaving the Medicare + Choice program because of the time constraints imposed by 42 U.S.C. § 1395w–24(a)(1) threatened the continuing viability of the program. In this regard, the Secretary points to Congress's revision of the statutory deadlines in 2002, an action, he maintains, shows that his concerns regarding the 2001 deadlines were bona fide. Pub.L. No. 107–188, § 532(b)(1), 116 Stat. 594, 696 (2002).

The following considerations undermine the exculpatory nature of the Secretary's explanation: (1) this court does not accept the unspoken message which the Secretary's explanation seeks to convey *viz.,* his actions were really for the benefit of the intended beneficiaries of the Medicare + Choice program rather than the parties who, because of their obvious ac-

cess to him, were able to persuade him to do what they wanted him to do, (2) in any event and to state the obvious, the Secretary has no more right to violate the law because he thinks he knows best than any other public official who like him took an oath to uphold the law regardless of their thinking regarding its wisdom, and (3) regardless of the Secretary's explanation for not following the mandate of 42 U.S.C. § 1395w–24(a)(1), in his opposition to the present motion he offers none for his decision to ignore the requirements of 42 U.S.C. § 1395w–21(d) which required him to *mail* information comparing the various plans to every eligible individual. With respect to § 1395w–21(d), the Secretary can point to no subsequent revision of this law to show that any rationale he might have had for ignoring it was, in the end, well taken or in a sense ratified. To the contrary, the Secretary's proposed means for disseminating information by telephone and Internet almost certainly would have been insufficient. As the court stated when it enjoined the Secretary from disobeying § 1395w–21(d), "[t]hese sources of information, although useful, will not alleviate the harm alleged by plaintiffs. For instance, as the [Centers for Medicare and Medicaid Services ("CMS") ] administrator recently stated in testimony before Congress, a CMS sponsored survey revealed that in 1999 only 21.3 percent of Medicare beneficiaries reported having access to the Internet." Tr. of Prelim. Inj. at 7–8.[1]

Other evidence in the record also lends support to a finding of bad faith. The Secretary made no effort to inform Medicare beneficiaries of the changes he was unilaterally making, despite his knowledge that any change in the deadlines deadlines would have "a direct effect on the information that is provided to beneficiaries to make health care choices." Ex. A to Compl. (May 25, 2001 letter). Only one month after HHS issued Operational Policy Letter (OPL) 132 on April 27, 2001, that stated there would be a July 1 deadline for submitting information, it issued the May 25, 2001 letter that extended the deadline to September 17. Medicare beneficiaries and the public in general were not informed about the change in deadlines through published notice or other means. Three weeks after the May 25, 2001 letter, the Secretary of HHS sent three memoranda to MCOs detailing the new deadlines and stating that comparative information would not be mailed. The Health Care Financing Administration's ("HCFA") web sites for beneficiaries did not contain links to the three memoranda in the *What's New* folder and *Information for Beneficiaries* folder. Gottlich Decl. ¶ 4 (attach. to Pl.'s Mot. for Prelim. Inj.). The three memoranda appeared on the web sites only in HCFA's *Information for Plans and Providers* folder. *Id.* By contrast, a link to OPL 132, which indicated a July 1 deadline would be in effect, had appeared on the *What's New* folder in April 2001. *Id.* ¶ 3. Thus, it appears that the Secretary was less than completely transparent and forthcoming about the fact that he had extended deadlines and

---

1. As for the feasibility of substituting the telephone for mailing plan comparison information, the court does not have to blink at the reality that for even the most patient of citizens, dealing with the bureaucracy by telephone is often a study in frustration. While the court did not delve into the practical aspects of the Secretary's plans, the court wonders how many times a Medicare beneficiary would simply give up attempting to learn the information she desired to obtain because of her inability to follow what undoubtedly would be crystal clear instructions regarding which button to push on her touch tone phone or her impatience while waiting for the voice of a live person who give her the needed explanation.

did not intend to mail comparative information in violation of the statute.

The Secretary's actions in direct contradiction to congressional directives coupled with his failure to consult with or notify beneficiaries were "extraordinary circumstances" warranting an award of bad faith attorney's fees. *Ass'n of Am. Physicians,* 187 F.3d at 660 (D.C.Cir.1999) (quoting *Nepera Chem.,* 794 F.2d at 702). Indeed, "dominating reasons of fairness so demand." *Id.*

### B. Calculation of Reasonable Attorney's Fees

■ To determine the reasonable amount of fees, the court conducts a three-part analysis: (1) a determination of the reasonable number of hours expended, (2) a determination of the hourly rate, and (3) where appropriate, a determination of a multiplier or other adjustment. *See Covington v. Dist. of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir.1995). Plaintiffs do not seek a multiplier in this action; thus the court need only calculate the reasonable hourly rate and the reasonable number of hours expended.

#### 1. Hourly Rate

No ceiling on the hourly rate exists for an award of attorney's fees for bad faith. 28 U.S.C. § 2412(b); *Kerin,* 218 F.3d at 190–91. Plaintiffs' counsel are therefore entitled to fees at prevailing market rates. *Covington,* 57 F.3d at 1108 nn. 16, 17. Plaintiffs calculate the reasonable market rate in 2001 at $360/hour, and in 2002 at $370/hour. HHS does not dispute these market rates.

#### 2. Reasonableness of Hours Expended on this Litigation

Plaintiffs argue that all hours expended in this litigation should be compensated at bad faith rates because defendant's bad faith necessitated this action. The Secretary argues that bad faith rates, if warranted at all, should be applied only to those hours expended before August 9, 2001, when the court issued the preliminary injunction with which he complied. The Secretary also argues that plaintiffs are not entitled to attorney's fees for 14 hours of work relating to a motion to enforce that was never filed.

■ Courts have apportioned hours at bad faith rates and EAJA rates when bad faith arose from conduct occurring in the course of litigation. *See Ostano Commerzanstalt v. Telewide Sys., Inc.,* 880 F.2d 642, 650 (2d Cir.1989) ("Only those fees attributable to the offensive conduct can be awarded."); *Sierra Club v. U.S. Army Corps of Engineers,* 776 F.2d 383, 389 (2d Cir.1985) (requiring that an award of bad faith attorney's fees be "limited to those expenses necessary to counter a losing party's bad faith"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton,* 989 F.Supp. 8, 15 (D.D.C.1997) (awarding attorney's fees at market rates until the defendants began acting in good faith), *rev'd on other grounds,* 187 F.3d 655 (D.C.Cir.1999). Because pre-litigation bad faith is at issue in the instant case, these cases are not on point. In determining whether a party's position was substantially justified under § 2412(d), one threshold determination governs eligibility for fees for the entire action. *See Commissioner, I.N.S. v. Jean,* 496 U.S. 154, 160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990); *Anthony v. Sullivan,* 982 F.2d 586, 589 (D.C.Cir.1993). In *Jean,* the Court noted that the EAJA "favors treating a case as an inclusive whole, rather than as atomized line-items." 496 U.S. at 161–62, 110 S.Ct. 2316. The Court also stated that district courts have "discretion to adjust the amount of fees for various portions of the litigation, guided by reason and statutory criteria .... Con-

gress intended the EAJA to cover the cost of all phases of successful civil litigation addressed by the statute." *Id.* at 165–66, 110 S.Ct. 2316. In determining attorney's fees under the Hyde Amendment,[2] the Sixth Circuit held that the district court should look to the losing party's position as a whole and make only one finding as to whether the losing party's position was vexatious, frivolous, or in bad faith. *United States v. Heavrin,* 330 F.3d 723, 730 (6th Cir.2003). This court agrees with the rationale of the *Heavrin* court. Because cases should be treated as a whole in determining EAJA fees, this court will make one determination of bad faith concerning the Secretary's pre-litigation conduct. His failure to abide by congressional mandates necessitated this action; therefore, all of the hours expended on this litigation were attributable to his bad faith, even after the issuance of the preliminary injunction.

The court finds that plaintiffs are entitled to attorney's fees for 14 hours of work relating to the motion to enforce that was never filed. Apparently, at an October 3, 2002 meeting with employees of the Centers for Medicare and Medicaid Services ("CMS"), CMS employees stated that the handbook to be sent out later in the fall to beneficiaries would not include comparative information about 33 Preferred Provider Organizations ("PPOs") that were participating in a demonstration project. Plaintiffs' counsel believed this to be in violation of this court's order and began preparing pleadings to enforce the order. Before the filing of the motion to enforce, a CMS employee sent plaintiffs' counsel a letter stating that CMS would include written information on the PPOs in the handbook. Plaintiffs' counsel then did not file the motion to enforce. Counsel for defendant represents that plaintiffs made no effort to contact defendant about this matter before drafting the motion to enforce.

Defendant argues that plaintiffs were not a prevailing party in this matter and that the court should not reward the "brief first, inquire later" approach plaintiffs adopted regarding the motion to enforce. Def.'s Opp'n at 17. Plaintiffs' counsel rejoins that they reasonably began work on a motion to enforce because, based on the statements of CMS employees at the October 3, 2002, meeting, time was of the essence so there was no reason to delay in drafting a motion to enforce. Although plaintiffs could have conferred with defendant earlier, plaintiffs did not violate LCvR 7(m), which requires only that the parties confer before a motion is filed. The court finds that plaintiffs' counsel reasonably expended the 14 hours on the motion to enforce, given defendant's previous adherence to a position that was not substantially justified and in bad faith.

Accordingly, the court awards plaintiffs attorney's fees in the following amounts:

| Attorney | 2001 (Hours @ $360) | 2002 (Hours @ $370) | Total |
|---|---|---|---|
| Chiplin | 16.3 hours: $5,868 | 0 | $ 5,868 |
| Deford | 116.6 hours: $41,976 | 100.3 hours: $37,111 | $ 79,087 |
| Gottlich | 171.4 hours: $61,704 | 14.0 hours: $5,180 | $ 66,884 |
| Hart | 18.6 hours: $6,696 | 0 | $ 6,696 |
| Nemore | 26.5 hours: $9,540 | 1.5 hours: $555 | $ 10,095 |
| Stein | 14.7 hours: $5,292 | 0 | $ 5,292 |
| **TOTAL:** | **364.1 hours: $131,076** | **121.8 hours: $42,846** | **$173,922** |

**2.** The Hyde Amendment is the EAJA's equivalent in criminal prosecutions and awards fees subject to the procedures and limitations of the EAJA. 18 U.S.C. § 3006A.

### III. CONCLUSION

For the foregoing reasons, it is this 23rd day of February, 2004, hereby:

**ORDERED**, that plaintiffs' motion for attorneys fees is **GRANTED**; and it is further

**ORDERED** that the Secretary shall pay plaintiffs' attorneys fees in the amount of $173,922.