# United States Court of Appeals for the Federal Circuit

2006-5105

CENTEX CORPORATION and
CTX HOLDING COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

------------------------------------------------------------------------
2006-5108

FIRST HEIGHTS BANK, FSB,
PULTE DIVERSIFIED COMPANIES, INC.,
and PULTE HOMES, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Kent A. Yalowitz, Arnold & Porter LLP, of New York, New York, argued for plaintiffs-appellants, CTX Holding Company, et al.  With him on the brief were J. Alex Brophy of New York, New York, and Melvin C. Garbow, Howard N. Cayne, and Thomas R. Dwyer, of Washington, DC.

Robert K. Huffman, Miller & Chevalier, Chartered, of Washington, DC, argued for plaintiffs-appellants, First Heights Bank, et al.  With him on the brief were Emmett B. Lewis and Alan I. Horowitz.

Scott D. Austin, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for defendant-appellee.  With him on the brief were Stuart E. Schiffer, Deputy Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director and Jeffrey T. Infelise, Trial Attorney.

Appealed From:  United States Court of Federal Claims

Senior Judge Eric Bruggink

# United States Court of Appeals for the Federal Circuit

2006-5105

CENTEX CORPORATION and
CTX HOLDING COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

2006-5108

FIRST HEIGHTS BANK, FSB,
PULTE DIVERSIFIED COMPANIES, INC.,
and PULTE HOMES, INC.,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  May 17, 2007
_____

Before BRYSON and LINN, <u>Circuit Judges</u>, and ROBINSON, <u>District Judge</u>.[*]

BRYSON, <u>Circuit Judge</u>.

In 1989, the plaintiffs in these consolidated cases entered into contracts with the United States by which they agreed to acquire failing thrifts insured by the government. In exchange, the parties contemplated that the plaintiffs would receive certain financial benefits, including favorable tax treatment. Congress subsequently became disenchanted with the arrangements and, in 1993, retroactively eliminated the tax benefits by enacting legislation known as the "Guarini amendment." The plaintiffs sued the United States, claiming that the enactment of the Guarini amendment resulted in a breach of their contracts. The plaintiffs prevailed on their claim and were awarded damages for the breach. <u>First Heights Bank, FSB v. United States</u>, 422 F.3d 1311 (Fed. Cir. 2005); <u>Centex Corp. v. United States</u>, 395 F.3d 1283 (Fed. Cir. 2005).

The plaintiffs then moved in the trial court to recover their attorney fees. They noted that the United States had waived its sovereign immunity with respect to the award of attorney fees in civil cases "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). The common law rule is that a party generally may not collect its attorney fees from the loser; rather, each party is expected to bear its own attorney fees pursuant to the longstanding "American Rule." There are several recognized exceptions to that rule, however, one of which allows fee-shifting when the successful party's opponent has acted in bad faith. <u>Alyeska Pipeline Serv.</u>

---

[*] Honorable Sue L. Robinson, Chief Judge, United States District Court for the District of Delaware, sitting by designation.

<u>Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247, 259 (1975) (recognizing the bad faith exception as an "assertion of inherent power in the courts").

The plaintiffs argued that the bad faith exception to the American Rule warranted an award of attorney fees because the government had acted in bad faith both before and after the enactment of the Guarini amendment.  The trial court disagreed.  We affirm the trial court's ruling in both cases.

I

The plaintiffs' main argument is that the trial court erroneously decided not to consider the actions of government agents between 1989 and 1993 in encouraging Congress to enact the Guarini amendment.  The plaintiffs contend that those government agents acted in bad faith and that their bad faith conduct authorized the trial court to award attorney fees in this litigation.

The trial court held that it could not consider the government agents' pre-1993 conduct because that conduct was extrajudicial, i.e., it did not implicate the judicial process.  The trial court held that its authority to assess attorney fees for bad faith conduct extends only to cases in which the bad faith conduct undermines the judicial process and that nothing in the government's 1989–1993 conduct was "an assault on legal processes in any way."  Instead, the conduct of government agents in promoting the Guarini amendment related to the plaintiffs' substantive claim (what the plaintiffs call "primary conduct").  The trial court held that awarding attorney fees based on such conduct would contravene a central purpose of the American Rule: to protect a defendant's right to go to court and argue a nonfrivolous defense to a claim, even if the claim arose from the defendant's bad faith conduct.  The trial court agreed with the Sixth

2006-5105
2006-5108
3

Circuit that shifting fees on account of bad faith primary conduct would discourage a party from using the judicial process to argue good faith legal defenses to bad faith primary conduct. Shimman v. Int'l Union of Operating Eng'rs, 744 F.2d 1226, 1231 (6th Cir. 1984).[1]

We agree with the trial court that authorizing a court to shift fees based solely on bad faith conduct that forms the basis for the substantive claim for relief would undermine the American Rule by penalizing a party who raises good faith defenses to claims of liability for bad faith conduct. In so doing, we align ourselves with eight other circuits that have taken the position that fee awards cannot be assessed based on claims of bad faith primary conduct. See Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., 313 F.3d 385, 391 (7th Cir. 2002) (holding that "behavior in the litigation itself . . . is the only lawful domain of the relevant concept of 'inherent authority'"); Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir. 1997) ("[A]n award of attorney fees may not be premised solely on prelitigation conduct."); Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1435 (8th Cir. 1997) ("[A court] may not base an [attorney fees] award solely on the conduct that led to the

---

[1] The trial court acknowledged that there is some case law support for the proposition that the judicial process is abused by a defendant's bad faith response to a claim for relief after the claim accrues but before the judicial process is formally invoked. Under that theory, if a defendant forces the plaintiff to go to court to obtain relief to which the plaintiff is clearly entitled, that conduct can be regarded as a type of bad faith for which a court may shift attorney fees. See Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 220 (D.C. Cir. 1991). The trial court noted that it did not need to decide whether that theory is valid, because the putative bad faith conduct in this case occurred before the breach of contract claim accrued. Thus, the conduct complained of would not allow for fee-shifting under even the broader conception of the bad faith exception to the American Rule.

substantive claim."); Ass'n of Flight Attendants v. Horizon Air Indus., Inc., 976 F.2d 541, 550 (9th Cir. 1992) ("[N]o federal appellate authority in or out of the Ninth Circuit has clearly approved an order shifting attorney's fees based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit. We decline to do so."); Sanchez v. Rowe, 870 F.2d 291, 295 (5th Cir. 1989) ("We hold that the requisite bad faith . . . may not be based on a party's conduct forming the basis for [the] substantive claim." (emphasis omitted)); Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985) ("Vexatious conduct inherent in the fraudulent acts that make up the 10b-5 cause of action cannot be the basis for an attorney fee award . . . ."); Shimman, 744 F.2d at 1230–33 ("We therefore hold that the bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim."); Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 262–63 (1st Cir. 1976) (disapproving the position that the bad faith exception extends to bad faith in the events giving rise to litigation).

The plaintiffs point to two cases from the D.C. Circuit that they argue allow an award of attorney fees based on bad faith in the conduct forming the basis for the lawsuit. See Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 220 (D.C. Cir. 1991); Nepera Chem., Inc. v. Sea-Land Serv., Inc., 794 F.2d 688, 702–03 (D.C. Cir. 1986). Neither of those cases provides persuasive support for the plaintiffs' position.

American Hospital involves bad faith conduct during the course of litigation (the violation of a court order). Moreover, even the more general language in American Hospital about the bad faith exception to the American Rule does not support the plaintiffs. Although the court stated that "[b]ad faith in conduct giving rise to the lawsuit"

may allow fee-shifting, that statement appears to have referred to a defendant's refusal to accede to a plaintiff's meritorious claim for relief before litigation, not to bad faith primary conduct.  See Am. Hosp., 938 F.2d at 220.

In Nepera, the court denied a request for attorney fees that was based on the conduct that gave rise to the substantive claim, for which punitive damages could not be awarded.  Nepera proves useful to the plaintiffs in one respect—it cites a 1947 D.C. Circuit case that approved an attorney fee award for bad faith conduct forming the basis for the lawsuit.  Schlein v. Smith, 160 F.2d 22, 25 (D.C. Cir. 1947) (allowing a borrower to collect attorney fees for bringing successful claims for usury and fraud in what amounted to an exercise of the district court's equitable power to award fees for bad faith conduct).  While Schlein seems to be a case in which a district court was allowed to award attorney fees based solely on bad faith primary conduct, it does not represent the prevailing view of the bad faith exception at common law, as indicated by the great majority of courts that have disapproved such awards.

Although the plaintiffs invoke several Supreme Court decisions, the cases they cite do not help them.  The plaintiffs rely on Vaughan v. Atkinson, 369 U.S. 527 (1962), as the most favorable Supreme Court authority.  In Vaughan, however, the Supreme Court approved an attorney fee award based not on conduct giving rise to the substantive claim but, rather, on the defendant's "willful and persistent" bad faith treatment of that claim after it accrued.  Id. at 528–34.  Moreover, the Court held that attorney fees are recoverable as damages in an admiralty case, a principle that has long been recognized in admiralty law, notwithstanding the applicability of the American Rule in other contexts.  Compare The Apollon, 22 U.S. (9 Wheat.) 362, 379 (1824)

(allowing counsel fees as part of damages under admiralty law), with Day v. Woodworth, 54 U.S. (13 How.) 363, 371–73 (1851) (stating that a court cannot award counsel fees in excess of the taxed costs as a penalty for misconduct, but noting that admiralty law allows for such a recovery), and Arcambel v. Wiseman, 3 U.S. (3 Dall.) 306, 306 (1796) (per curiam) ("The general practice of the United States is in opposition to [recovery of counsel's fees]; and even if that practice were not strictly correct in principle, it is entitled to the respect of the court, till it is changed, or modified, by statute.").

Other Supreme Court cases, including more recent opinions, use language suggesting that abuse of the judicial process refers to abusive conduct during litigation rather than bad faith primary conduct. See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) ("[T]he inherent power extends to a full range of litigation abuses."); id. at 54 n.17 (emphasizing that the sanctionable acts were "in connection with the [court] proceedings"); Roadway Express, Inc. v. Piper, 447 U.S. 752, 765 (1980) (stating that the courts' inherent power applies to "abusive litigation practices"); Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575, 580 (1946) (stating that a court may shift fees when "fraud has been practiced upon it" or when "the very temple of justice has been defiled").

Pointing to the text and legislative history of the Equal Access to Justice Act, the plaintiffs argue that Congress intended to allow fee-shifting for agencies' bad faith primary conduct, not merely for their litigation conduct. The plaintiffs note that 28 U.S.C. § 2412(c)(2) provides that if the basis for an attorney fees award "is a finding that the United States acted in bad faith, then the award shall be paid by any agency found

to have acted in bad faith."  In addressing that section, the House committee report states that section 2412(c)(2) is intended to push fiscal responsibility down to the individual "agencies and departments" acting in bad faith and that the fees award will be paid by the "governmental entity" at fault.  H. Rep. No. 96-1418, at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 4984, 4996.  The plaintiffs argue that under the government's theory, fee-shifting would be available only when lawyers for the Department of Justice litigate in bad faith.  The plaintiffs argue that the government's theory must be wrong because Congress would not have imposed fiscal responsibility on agencies generally if it intended to address only bad faith litigation conduct by Department of Justice attorneys.

The plaintiffs' argument erroneously assumes that agencies other than the Department of Justice cannot engage in bad faith conduct that abuses the judicial process.  That assumption is belied by the facts of American Hospital, on which the plaintiffs rely, in which the district court awarded attorney fees based on a bad faith violation of a court order by the Secretary of Health of Human Services.  938 F.2d at 220.  Interpreting section 2412(c)(2) to extend to agencies besides the Department of Justice makes good sense:  If Department of Justice attorneys engage in abuse of the judicial system, the Department of Justice will pay any resulting fee award; if another agency's bad faith conduct results in an abuse of the judicial system, that agency will pay any fee award.  Therefore, we reject the plaintiffs' argument that section 2412(c)(2) is contrary to the well-settled common law rule that a court may not shift attorney fees based solely on bad faith primary conduct.

The plaintiffs' next argument turns on the legislative history of an amendment to section 2412(d)(1)(A) of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). Unlike section 2412(b), which allows for fee awards when the government acts in bad faith as defined under the common law, section 2412(d)(1)(A) allows for fee awards to individuals or small businesses when the "position of the United States" is not "substantially justified."[2]  Both provisions were enacted in 1980.  In 1985, Congress amended the law to remove the sunset provision for section 2412(d)(1)(A).  At the same time, Congress added a provision stating that the "position of the United States" includes action or inaction by the agency upon which the lawsuit is based.  28 U.S.C. § 2412(d)(2)(D).  That amendment does not apply to section 2412(b), but the plaintiffs note that the committee report on the 1985 amendment refers to the expanded definition for section 2412(d)(1)(A) as protecting the "incentive for careful agency action that Congress hoped to create in 1980."  H. Rep. No. 99-120, at 12 (1985), reprinted in 1985 U.S.C.C.A.N. 132, 141.  The plaintiffs argue that the general reference to the 1980 statute in the report ties the broad definition in section 2412(d)(1)(A) not only to section 2412(d), but also to the separate fee-shifting provision contained in section 2412(b).

We are not persuaded that, by that single general statement, the House committee in 1985 signaled an intention to alter the common law fee-shifting rule adopted five years earlier in section 2412(b).  Although the 1985 committee report

---

[2]     The scope of liability for fees to individuals and small businesses, which is governed by section 2412(d), is broader than the scope of liability for fees to other entities, which is governed by section 2412(b).  For that reason, our recent decision in Hubbard v. United States, 480 F.3d 1327 (Fed. Cir. 2007), which involved a fee award under section 2412(d), is inapplicable to this case, which involves section 2412(b).

refers to the 1980 statute in general terms, the statement on which the plaintiffs rely is made in the context of a discussion of the fee-shifting provision of section 2412(d)(1)(A) and of a court decision that interpreted that provision narrowly. See Spencer v. NLRB, 712 F.2d 539, 546–61 (D.C. Cir. 1983). That portion of the report does not refer to the common law prohibition against fee-shifting or the bad faith exception to the American Rule. H. Rep. No. 99-120, at 12–14, reprinted in 1985 U.S.C.C.A.N. at 140–42. Thus, the report's discussion of the "purpose of the 'Equal Access to Justice Act'" must be understood to refer to the section 2412(d) provision for fee awards to individuals and small businesses, not to the separate provision, section 2412(b), that applies to fee-shifting in all other cases.

Finally, the plaintiffs argue that the bad faith conduct of government agencies in encouraging the enactment of the Guarini amendment was not the conduct on which we premised the government's liability for breach of contract and that fee-shifting for the agencies' bad faith conduct, therefore, is permitted. We disagree. Fee-shifting is not permitted for bad faith conduct that precedes the accrual of the claim in question. In this case, the plaintiffs' claims did not accrue until the enactment of the Guarini amendment. The conduct of government agencies and agents before that time cannot form the basis for an award of attorney fees under the common law rule, as incorporated in section 2412(b) of the Equal Access to Justice Act.

II

The plaintiffs also argue that the government advanced frivolous arguments in the trial court and thus litigated these cases in bad faith, justifying an award of attorney fees. The trial court disagreed. The court explained that in high-stakes cases of first

impression such as these, both sides will typically proffer a variety of arguments, some of which are weak, and that such a practice does not necessarily reflect bad faith in the litigation when stronger arguments are advanced as well. The trial court then went on to offer several examples of the government's stronger arguments. We review the trial court's ruling for an abuse of discretion, see Chambers, 501 U.S. at 55, and we hold that the court did not abuse its discretion in these cases. The government's defenses presented several difficult issues for the trial court and for this court on appeal. Although some weaker arguments were raised, the trial court was justified in concluding that the government's position as a whole was sufficiently supported by fair argument that it did not constitute an abuse of the judicial system warranting an award of attorney fees.

AFFIRMED.